UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------x
                                          :
TYCO INTERNATIONAL, LTD., and             :
TYCO INTERNATIONAL (US), INC.,            :
                                          :        02 Civ. 7317 (TPG)
               Plaintiffs/Counterclaim    :
               Defendants,                :        OPINION
                                          :
            – against –                   :
                                          :
L. DENNIS KOZKOWSKI,                      :
                                          :
               Defendant/Counterclaim     :
               Plaintiff.                 :
-----------------------------------------x
```

Plaintiffs Tyco International, Ltd. and Tyco International (U.S.), Inc. (collectively "Tyco") bring this action against their former chief executive, Dennis Kozlowski, making numerous claims of wrongdoing. Defendant Kozlowski asserts counterclaims against Tyco seeking payment under various deferred compensation agreements as well as indemnification relating to suits filed by third parties against Kozlowski.

Tyco moves for partial summary judgment on all their causes of action. Tyco further seeks summary judgment dismissing all of Kozlowski's counterclaims. Kozlowski moves for partial summary judgment as to one of the deferred compensation agreements and as to his claim for indemnification.

Tyco's motion is granted in part and denied in part. Kozlowski's motion is denied in its entirety.

There are two issues that mainly determine the outcome of all the motions.  The first is choice of law.  The second is collateral estoppel.

**FACTS**

Tyco is a large multinational company primarily engaged in the manufacture of a wide variety of products and the provision of security and related services.  The company was founded in 1962 and was originally incorporated as Tyco, Inc. in Massachusetts.  In 1993 the company changed its name to Tyco International, Ltd.  In 1995, while still incorporated in Massachusetts, the company opened an office in New York City.  In 1997, the company reorganized and incorporated under the laws of Bermuda under the name Tyco International, Ltd. and the original company became a United States subsidiary, Tyco International (U.S.), Inc., incorporated, at least for a time, in the state of Nevada.  Tyco has had operating offices in New Hampshire, New Jersey, Pennsylvania, Florida, and Bermuda, among other places.

In 1975, Tyco, Inc. hired Kozlowski to be its Director of Internal Audit.  Over the next decade and a half, Kozlowski rose through the ranks, eventually becoming Chief Executive Officer and Chairman of the Board by 1993.  After the 1997 reorganization, Kozlowski became Chief Executive Officer and Chairman of the Board of the new Tyco International, Ltd.  Kozlowski remained in these positions until 2002.  Kozlowski was undoubtedly also the chief executive of the U.S. subsidiary, Tyco International (U.S.), Inc., after the 1997 reorganization.

Kozlowski was compensated in various ways. Part of this compensation included various deferred compensation agreements including a Retention Agreement, signed on January 2, 2001; an Executive Retirement Agreement ("ERA"), signed March 1, 1999; a Deferred Compensation Plan ("DCP"), in which Kozlowski enrolled on March 29, 1994; a Supplemental Executive Retirement Plan ("SERP"), in which Kozlowski enrolled on January 1, 1995; and a Life Insurance and Shared Ownership Insurance Agreement, entered into on March 26, 2001. The total amount of compensation outstanding, under the terms of the agreements, is well over $100 million. Kozlowski, as a senior corporate officer, also had the benefit of indemnification by Tyco for any suits filed against him for actions taken in his official capacity, as provided in Tyco's by-laws.

In June 2002, Kozlowski was discharged from Tyco because he faced imminent indictment in the state of New York for sales tax evasion. An ensuing investigation revealed that Kozlowski had conspired with other corporate officers to pilfer Tyco's treasury of tens of millions of dollars.

This led to a major New York state criminal case involving various charges other than sales tax evasion. Kozlowski was prosecuted along with codefendant Mark Swartz. That trial took place in 2005, and Kozlowski was convicted on 22 of the 23 counts of the indictment. Kozlowski was sentenced to prison and is currently serving that

sentence.  The convictions were upheld on appeal.  People v. Kozlowski,
846 N.Y.S.2d 44 (N.Y. App. Div. 2007), aff'd 11 N.Y.3d 223 (2008), cert.
denied 129 S. Ct. 2775 (2009).  Aside from the felony convictions,
Kozlowski faces numerous civil suits.

For reasons that will appear, it is important for the collateral
estoppel issue to describe, with some specificity, what wrongdoing
Kozlowski was convicted of.  Furthermore, for the purposes of the choice
of law issue, it is appropriate to determine where this alleged wrongdoing
took place.

Kozlowski was charged with 12 counts of grand larceny, one count
of conspiracy to commit larceny, nine counts of falsifying business
records, and one count under New York's Martin Act charging fraud in
connection with the marketing of securities.  Kozlowski was convicted on
all counts except one of the business record counts.

Excerpts from the record in the criminal case of particular
relevance for present purposes are the indictment, the judge's charge to
the jury, and the verdict sheet.  In the jury charge, the judge made an
excellent summary of the charges, and also, of course, instructed the
jury on what they must find in order to convict on each count.

The grand larceny counts charged grand larceny in the first degree,
which means that the value of the taken property must exceed $1
million.

It should be noted that in connection with both the grand larceny counts and the false record counts, there were references to two corporate loan programs called the Key Employee Loan Program ("KELP") and the New York Corporate Headquarters Relocation Loan Program.

The following is a summary of the substantive grand larceny counts against Kozlowski:

1. Kozlowski's wrongful reduction of his KELP debt by $25 million, September 1999.

2. Kozlowski's assistance in wrongfully reducing codefendant Swartz's KELP debt by $12.5 million, August 1999.

3. Kozlowski's wrongful taking from the so-called "TyCom IPO bonus" plan, $32 million, August 2000 to October 2000.

4. Kozlowski's assistance of Swartz to wrongfully obtain $16 million from the same program.

5. Kozlowski's wrongful taking in connection with the sale of the "ADT automotive business unit," $16 million, October and November 2000.

6. Kozlowski's assistance of Swartz in wrongfully taking $8 million in connection with the same transaction.

7. Against Swartz only.

8. Kozlowski's wrongful taking in connection with the "FLAG Transaction," $8 million, June to November 2001.

9.  Kozlowski's assistance of Swartz in wrongfully taking $4 million in connection with the same transaction.

10.  Kozlowski's wrongful taking of funds to purchase artwork, $1.975 million, August and September 2001.

11.  Kozlowski's wrongful taking of funds to purchase artwork, $8.8 million, December 2001.

12.  Kozlowski's wrongful taking of funds to purchase art work, $3.95 million, January 2002.

13.  Kozlowski wrongfully causing disbursements to a director by the name of Frank E. Walsh, $20 million, July 2001.

Count 14 charged Kozlowski and Swartz with conspiracy to commit grand larceny in the first degree, to commit grand larceny in the second degree, and to commit criminal possession of stolen property in the first degree, or the second degree.  In connection with the present civil action, the conspiracy count is not useful, because it alleges a broad range of wrongdoing, and the jury was not required to find Kozlowski guilty of all of such wrongdoing, nor was the jury asked for specification as to what it actually found.

Count 15 was brought under the New York Martin Act, General Business Law § 352.   This charged fraud in connection with the marketing of securities.  Count 15 will not be discussed further.

Counts 16-24 charged false entries in business records.  Kozlowski was acquitted on Count 17, and convicted on all the other false entry counts.

Count 16 alleged that in September 1995 Kozlowski falsified records in connection with the New York City Headquarters Relocation Loan Program.  The specific charge was apparently that Kozlowski implemented a different relocation plan from the one approved by the Board of Directors.  The use of such a relocation plan was a way to take money from the company.

Counts 18-24 alleged that Kozlowski falsified, on various dates, answers to the Director and Officer Questionnaires.  Each of these questionnaires asked for a certification to the effect that the director or officer had acquired no indebtedness to the company (aside from KELP loans) in excess of $60,000 after a particular specified date.  The allegations were that Kozlowski made the certifications required and that these certifications were false, because he had engaged in transactions which made him indebted to the company for amounts far greater than $60,000 during the periods in question.

As the court noted earlier, the place where the wrongful deeds were committed has relevance on the choice of law issue.  Without searching the entire criminal trial record of the trial testimony it is reasonable to conclude, for the purposes of the present civil action, that the wrongdoing was centered in New York.  Each count of the indictment had

an allegation that the wrongdoing occurred "in the county of New York and elsewhere."  The judge in the criminal case instructed the jury, in connection with the substantive grand larceny counts and the business records counts, that they must find that the wrongful conduct occurred "in the county of New York and elsewhere."  There was no discussion of any significant connection with "elsewhere."

The record shows specifically that Kozlowski used Tyco's New York City Headquarters Relocation Loan Program as a cover to steal funds from Tyco and falsified records pertaining to that program to hide his activities.  That clearly related to New York.  Kozlowski also used funds illegally obtained to invest in New York real estate and purchase artwork in New York.

## THE PRESENT ACTION

Before the criminal trial and shortly after he was discharged from Tyco in 2002, Kozlowski demanded payment as required in the aforementioned compensation agreements.  Tyco refused and instead filed the instant action asserting claims against Kozlowski.

Kozlowski answered with counterclaims, seeking payment under the deferred compensation agreements discussed above and indemnification against the civil suits naming him as a defendant.  Tyco replied that the compensation agreements are void as fraudulently induced and that, in any case, they represent compensation that Kozlowski must forfeit under New York's "faithless service doctrine."

## DISCUSSION

The rules regarding the treatment of summary judgment motions are well understood and have been summarized in many decisions.

The following discussion will deal first with Tyco's claims and then with Kozlowski's counterclaims

As stated earlier, Tyco's motion turns largely on issues of choice of law and collateral estoppel.

**Choice of Law**

There is a dispute, although a limited one, over which law to apply in this case, the law of New York, which is the forum, or the law of Bermuda, where Tyco International Ltd. has been incorporated during much of the relevant time period.  Because this is a diversity case, New York choice-of-law rules apply.  Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487 (1941).  The first step is to analyze whether any conflict exists between the competing jurisdictions as to the law at issue in the case.  Burnett v. Columbus McKinnon Corp., 887 N.Y.S.2d 405, 408 (4th Dep't 2009).  If no conflict exists, the law of the forum is applied, here New York law.  Tronlone v. Lac d'Amiante Du Quebec, Ltee, 747 N.Y.S.2d 79, 80 (1st Dep't 2002), order aff'd, 760 N.Y.S.2d 96 (2003).  If conflicts do exist, New York's substantive choice of law rules would apply.  Locke v. Aston, 814 N.Y.S.2d 38, 42 (1st Dep't 2006).[1]

---

[1] The various contracts involved in this case all contain choice of law clauses and there is no dispute as to what law to apply to them, as discussed *infra*.

The parties disagree on whether there is any conflict to resolve here. Tyco urges that no relevant conflicts exist between Bermuda and New York law. Kozlowski does not argue that there is any difference between Bermuda law and New York law as to any of Tyco's claims except for a claim of constructive fraud and the remedy of forfeiture of compensation, both of which Kozlowski argues Bermuda does not recognize.

Tyco does not dispute Kozlowski's assertion that Bermuda law does not recognize constructive fraud but argues that New York law applies. Therefore, an analysis is necessary to determine which law to apply.

As to forfeiture of earned compensation for disloyalty as sought in this case, Bermuda, by way of English law, does appear to recognize such a remedy or defense, at least as to benefits paid to external agents. <u>Imageview Mgmt v. Jack</u>, [2009] EWCA Civ 63 at [50] (appeal taken from Eng.). However, because it is difficult to determine whether such a remedy or defense under Bermuda law would apply to a case, such as the instant one, involving a corporate officer, the court will conduct an analysis to determine whether New York or Bermuda law would apply in the event of a conflict.

<u>Interest Analysis</u>

To resolve a conflict of law it must be determined which jurisdiction has the greatest concern in the issues raised in the litigation.

- 10 -

Babcock v Jackson, 12 N.Y.2d 473, 481 (1963).  Obviously, the state in which a tort is said to occur has a strong interest in the case.  See Neumeier v. Kuehner, 31 N.Y.2d 121, 128 (1972).  Unfortunately, determining where a tort occurred is much easier in a case such as that involving a car accident than in the case of a fraud or other wrongdoing against a multinational corporation.

In dealing with the question of where a tort occurred, courts consider where the wrongful conduct took place and where the injury has been received.  Where the place of the conduct and the place of the injury are different, courts in New York appear to focus on whether the issues involved seem on balance to be "conduct-regulating" or "loss-allocating."  Where the issue is mainly loss allocation, the law of the place of the injury (usually the victim's domicile) is generally applied.  See K.T. v. Dash, 827 N.Y.S.2d 112, 116 (1st Dep't 2006).  However, it is usual in intentional tort claims to classify the law as conduct-regulating.  Cooney v. Osgood Mach., 81 N.Y.2d 66, 73 (1993).

In the present case, the claim of constructive fraud (the fifth cause of action) is based on the basic fraud claim (the fourth cause of action).  However, constructive fraud does not require proof of scienter, but requires proof of the existence of a fiduciary or confidential relationship.  Here, both claims involve the same charges of falsification of business records that were presented in the criminal case.  Thus the civil action claim of constructive fraud involves the most serious kind of

deception, designed to conceal large-scale thefts from Tyco.   The application of tort law to this claim is surely to be classified as "conduct regulating."

The forfeiture of compensation sought by Tyco as a remedy for Kozlowski's disloyalty (and also as a defense to Kozlowski's counterclaims) is also conduct-regulating, even though it is only "applicable once there is admittedly tortious conduct."   Dash, 827 N.Y.S.2d at 116.   The primary purpose of this remedy, the "faithless servant doctrine," is to deter disloyal conduct, so "that all temptation shall be removed from one acting in a fiduciary capacity to abuse his trust or seek his own advantage in the position which it affords him." Robert Reis & Co. v. Volck, 136 N.Y.S. 367, 369 (1st Dep't 1912).

Applying the "interest analysis" to Tyco's claims of constructive fraud and forfeiture of compensation, it would seem that New York law would apply since New York, as discussed above, was the central place of the wrongful conduct.

While New York, as the central place of the conduct, has a strong interest in applying its laws to wrongful conduct, the court must now compare New York's interest with the interest that Bermuda has in applying its laws to Kozlowski's conduct, and determine whether applying New York law would harm those interests, and vice versa.   See Schultz v. Boy Scouts of America, Inc., 65 N.Y.2d 189, 196-99 (1985). "The principles compelling a forum state to apply foreign law come into

play only when a legitimate and substantial interest of another state would thereby be served." <u>Norlin Corp. v. Rooney, Pace Inc.</u>, 744 F.2d 255, 263 (2d Cir. 1984). While New York has a clear interest in deterring fraud and theft within its borders, an interest that would be thwarted by applying Bermuda's arguably more lenient standards to Kozlowski's conduct, Bermuda has no corresponding interest in applying those more lenient standards to foreign defendants who cause injury to plaintiffs domiciled in Bermuda. See <u>Dash</u>, 827 N.Y.S.2d at 115.

Thus, the analysis of the interests involved in this case points strongly in favor of applying the law of New York as to constructive fraud and forfeiture of compensation.

<u>Internal Affairs Doctrine</u>

Kozlowski relies heavily on the internal affairs doctrine to argue that Bermuda law should apply to Tyco's claims of constructive fraud and forfeiture.  As stated above, Tyco International Ltd., the parent company, was a Bermuda corporation during much of relevant time period.

The internal affairs doctrine posits that a state has an interest in applying its laws uniformly to issues relating to "the organic structure or internal administration of a corporation" incorporated in that state. Restatement (Second) of Conflict of Law § 309 comment c.  In contrast, more common issues, such as those "relating to the liability of the

directors and officers for [the making of a contract or the commission of a tort] can practicably be decided differently in different states." Id.

New York takes a much narrower view of the internal affairs doctrine than do some other jurisdictions.   In cases in other jurisdictions, there appears to be some tendency, where officers or directors of a corporation are involved, to make "automatic reference" to the state of incorporation's laws, without engaging in any weighing of interests.   In New York, however, such "automatic reference . . . is rejected."   Resolution Trust Corp. v. Gregor, 872 F. Supp. 1140, 1150 (E.D.N.Y. 1994).

In New York, the internal affairs doctrine is applied only as one factor in an analysis where "the law of the state with the greatest interest in the issue governs."   BBS Norwalk One, Inc. v. Raccolta, Inc., 60 F. Supp. 2d 123, 129 (S.D.N.Y. 1999).   An example of this application of the internal affairs doctrine to facts similar to this case is University of Montreal Pension Plan v. Banc of America Securities, LLC, 446 F. Supp. 2d 163 (S.D.N.Y. 2006).   In that case the court rejected application of the laws of the state of incorporation and applied New York law, when, as here, the state of incorporation had "only limited connection to the conduct at issue," id. at 193, and where, as here, the breach of fiduciary duty related to conduct that occurred in New York.   Id. at 194-95.

Kozlowski points to a recently decided case involving Tyco International Ltd., which was, as already stated, a Bermuda corporation.

Tyco Intern. Ltd. v. Walsh, No. 02cv4633, 2010 WL 4118074 (S.D.N.Y. October 20, 2010) (Cote, J.).  Judge Cote applied Bermuda law to a claim of breach of fiduciary duty by Tyco against Frank Walsh, a former outside director of Tyco, for failing to timely disclose a $20 million finder's fee that Walsh received for his role in facilitating a merger.  Id. at *1.  The claim turned in part on an interpretation of Tyco's by-laws.  The by-laws expressly stated that such matters of interpretation were to be governed by Bermuda law.  Id. at *12.  There was also an issue in the case whether Tyco's board had impliedly ratified the payment to Walsh at a meeting that took place in Bermuda.  Id. at *1.  The only conduct in New York related to the claim was an invoice received in Tyco's New York office, id. at *12.

The instant case, in contrast, does not involve issues of organic structure or internal administration within the meaning of the authorities.   This case involves claims of most serious kind of wrongdoing by a former officer, much of it occurring in New York.  Thus, even after the internal affairs doctrine is considered, New York still has the greater interest in applying its law to constructive fraud cause of action and the forfeiture of compensation remedy.  See Richbell Info. Servs., Inc. v. Jupiter Partners, L.P., 765 N.Y.S.2d 575, 586 (1st Dep't 2003) (rejecting reference to state of incorporation's laws when the "fact that a corporate entity was involved was only incidental").

The court will therefore apply New York law to the claims of constructive fraud and forfeiture of compensation.  This means that the court will <u>not</u> apply Bermuda law, which does not recognize a cause of action for constructive fraud.  For the purposes of this case, based on New York law, such a cause of action will be recognized.  As to forfeiture of compensation, the court believes that both New York and Bermuda law would recognize such a remedy.  However, to deal with any possible doubt on the application in this case, the court holds, for reasons described above, that New York law, which clearly recognizes such a remedy, applies.

**Collateral Estoppel**

A criminal conviction precludes a convicted defendant from denying facts in a later civil suit that were actually litigated and adjudicated in the earlier criminal proceeding.  <u>Kennedy v. Mendoza-Martinez</u>, 372 U.S. 144, 157 (1963).  In the present case, New York's law of collateral estoppel governs.  <u>See</u> <u>Sullivan v. Gagnier</u>, 225 F.3d 161, 166 (2d Cir. 2000).

For collateral estoppel to apply, there must be an identity of issues which have necessarily been decided in the prior action and decisive of the present action, and there must have been a full and fair opportunity to contest the decision now said to be controlling.  <u>Buechel v. Bain</u>, 97 N.Y.2d 295, 304 (2001).

Earlier in this decision, the court summarized the grand larceny and falsification of business records counts on which Kozlowski was convicted in his criminal case.  The convictions necessarily constituted jury findings not only that Kozlowski wrongfully took or misappropriated the funds and property of Tyco, and falsified Tyco's business records, but that he did so with the intent to do the wrong, and, in connection with the false entry, that he did so with intent to deceive.  These convictions establish the elements of the following causes of action in the civil case beyond any doubt.

The theft of millions of dollars from Tyco was, to say the least, a breach of fiduciary duty (first cause of action).  The same can be said of the elements of the second and third causes of action, alleging, respectively, inducing breach of fiduciary duty and conspiring to breach fiduciary duty.  There is no question that any civil litigation on the issue of liability on the fiduciary duty causes of action would involve identical issues as those litigated in Kozlowski's criminal case.

However, the convictions only establish liability.  Damages were, of course, not established in the criminal trial, and need to be determined in the civil action.

As to the fourth and fifth causes of action for fraud and constructive fraud, respectively, the verdicts in the criminal trial establish Kozlowski's intentional falsification of the questionnaire answers, but did not determine other elements of the civil claims such as

- 17 -

reliance and injury.  Even partial summary judgment for Tyco would be inappropriate.

Regarding the eleventh cause of action for conversion, the criminal verdicts necessarily establish the elements of liability for, and were based on identical issues as, conversion, leaving only damages for resolution in further proceedings.

Thus, partial summary judgment should be granted as to Tyco's first, second, third, and eleventh causes of action.  It is denied as to the fourth and fifth causes of action.

Because of the liability that does exist as to certain causes of action, the law of New York is that Kozlowski must forfeit compensation earned during his period of disloyalty.  The availability of such a remedy in New York, as discussed above, is known as the "faithless servant doctrine."  A faithless servant is one who owes a duty of fidelity to a principal and who is faithless in performance of his services.  Feiger v. Iral Jewelry, Ltd., 41 N.Y.2d 928, 928 (1977).  A faithless servant forfeits his right to compensation for services rendered by him.  Lamdin v. Broadway Surface Advertising Corporation, 272 N.Y. 133, 138 (1936).  A faithless servant forfeits all compensation earned during the period of his disloyalty even if his services benefited the principal in some part.  See Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184, 208 (2d Cir. 2003).

Kozlowski's criminal convictions establish that his disloyalty spanned from, at the latest, September of 1995, until Kozlowki's dismissal in June 2002. Therefore, Tyco is entitled to have Kozlowski forfeit all compensation earned during this period of time.

**Plaintiff's Other Causes of Action**

Equitable Claims (sixth, seventh, and tenth causes of action)

Tyco brings equitable claims of accounting (sixth cause of action), constructive trust (seventh cause of action), and unjust enrichment (tenth cause of action). Because questions remain as to whether Tyco's claims for damages will be an adequate legal remedy, Tyco's application for summary judgment as to these equitable causes of action is denied.

Breach of Contract (eighth cause of action).

Tyco alleges that Kozlowski has not repaid amounts loaned to him through Tyco's KELP program, as required by the program terms. The program required that all amounts loaned to an employee would become immediately due upon that employee's termination for cause. Kozlowski does not dispute that he was terminated for cause, or that he has failed to repay amounts due on his loans. Kozlowski's failure to dispute this claim entitles Tyco to summary judgment on its eighth cause of action.

Declaratory Judgment (ninth cause of action).

Tyco seeks a judgment declaring the Retention Agreement between Kozlowski and Tyco to be invalid. For reasons discussed later in connection with the second counterclaim, the court holds that Kozlowski

can recover nothing on the Retention Agreement. Tyco is entitled to summary judgment on its ninth cause of action.

>      Contribution (twelfth cause of action).

Tyco seeks contribution from Kozlowski for defense costs arising from lawsuits that Tyco contends arose as a result of Kozlowski's breach of fiduciary duty. The "critical requirement" for such contribution is that Kozlowski's breach of duty must have played some "part in causing or augmenting injury for which contribution is sought." Nassau Roofing & Sheet Metal Co., Inc. v. Facilities Development Corp., 71 N.Y.2d 599, 603 (1988). While Kozlowski is precluded from relitigating the issue of his breach of duty, none of his convictions touch on the cause of the various lawsuits for which Tyco is now seeking contribution. Because of the difficult factual issues involved in a contribution claim, Tyco's application for summary judgment is denied as to the twelfth cause of action.

**Kozlowski's Counterclaims**

Kozlowski brings 14 counterclaims for damages and equitable relief arising from alleged breaches of various deferred compensation and other benefit plans worth hundreds of millions of dollars. These claims implicate Bermuda and New York contract law; federal common law; as well as the common law doctrines of "unclean hands" and "faithless servant."

First, Second, and Ninth Counterclaims

Three contracts for which Kozlowski seeks damages for breach were entered into subsequent to Kozlowski's first breach of fiduciary duty in 1995:  The ERA was signed March 1, 1999 (first counterclaim); the Retention Agreement was entered into on January 22, 2001 (second counterclaim); and the Life Insurance and Shared Ownership Insurance Agreement was entered into on March 26, 2001 (ninth counterclaim). Because Kozlowski failed to disclose his many breaches of fiduciary duty to Tyco, these contracts were fraudulently induced and are therefore voidable by Tyco.  Even were they not fraudulently induced, Kozlowski would not be able to collect benefits under these agreement as they accrued during a period of Kozlowski's faithless service to Tyco.

There is some dispute whether the ERA, as a deferred compensation agreement, is governed by ERISA, thereby preempting Kozlowski's breach of contract claim.  However, the court need not explore here the extent to which a benefit claim based on contract may be preempted by ERISA since the contract claims have no merit. Gallione v. Flaherty, 70 F.3d 724, 729 (2d Cir. 1995).

Fraudulent Inducement

The analysis of the defense of fraudulent inducement is the same for each contract.  One of these contracts--the ERA--is governed by Bermuda law, while the two others--the Retention Agreement and the Shared Ownership Insurance Agreement--are governed by New York law.

Both New York and Bermuda recognize the defense of fraudulent inducement.  E.g., GTE Automatic Electric Inc. v. Martin's Inc., 512 N.Y.S.2d 107, 107-08 (1st Dept.1987); Item Software Ltd v. Fassihi, [2004] EWCA Civ 1244 (Appeal taken from Eng.) at [11].  Furthermore, the elements of fraud do not differ in any significant way between the two jurisdictions.  See AIC Ltd. v. ITS Testing Services Ltd., [2006] EWCA Civ 1601(appeal taken from Eng.) at [251].  As to representation of a material fact, falsity, and scienter, both English and New York law recognize that the failure of a fiduciary to disclose a previous breach of fiduciary duty amounts to a known misrepresentation of a material fact.  See, e.g., Baii Banking Corp. v. Northville Industries Corp, 648 N.Y.S.2d 325, 326 (2d Dep't 1996); Item Software Ltd at [11].

As has been previously noted, Kozlowski's convictions for falsification of business records and grand larceny conclusively establish his many breaches of fiduciary duty.  All of these agreements were entered into in the midst of Kozlowski's many breaches of fiduciary duty and without disclosure by Kozlowski.  Tyco's reliance on these misstatements is demonstrated by the fact that Kozlowski remained at the helm of the company.  In contrast, when Tyco learned of Kozlowski's alleged sales tax evasion, a crime presumably much less harmful to Tyco than theft of its funds, the company forced Kozlowski out.  Therefore, Tyco has a defense to enforcement of all contracts entered into subsequent to the beginning of Kozlowski's misconduct, and is entitled to

summary judgment dismissing Kozlowski's first, second, and ninth counterclaims.

Faithless Servant Doctrine

Even if these contracts were validly entered into, Kozlowski cannot recover on them.  The "faithless servant doctrine," used as a sword in Tyco's claims, may also be used as a shield to Kozlowski's counterclaims.  As a result of Kozlowski's many breaches of fiduciary duty, Tyco has no duty to honor compensation agreements made during Kozlowski's period of disloyalty.

A 2009 case in New York's appellate division is on point.   In William Floyd Union Free School District v. Wright, 877 N.Y.S.2d 395 (2d Dep't 2009), a school district sued its former treasurer and assistant superintendent for breach of fiduciary duty.  The school district sought to recover compensation paid to defendants and to avoid paying premiums on insurance policies covering defendants.  The lower court granted summary judgment in favor of the school district on its breach of fiduciary claims based on the defendants' pleas of guilty to several counts of grand larceny in a criminal case.   The court also relieved the school district of its duty to pay deferred compensation owed defendants but limited the school district's relief as to the insurance premiums to only 10 years.   On appeal, this limit was removed.   The Appellate Division held that the court "erred . . . in limiting the defendants' forfeiture of insurance benefits to a period of 10 years. Where, as here,

defendants engaged in repeated acts of disloyalty, complete and permanent forfeiture of compensation, deferred or otherwise, is warranted under the faithless servant doctrine." Id. at 397.

In the present case, Kozlowski's multiple breaches of his fiduciary duty over several years clearly demonstrate his faithless service. Kozlowski must therefore forfeit all compensation and benefits, deferred or otherwise, earned during his period of disloyalty, which began at its latest in September 1995. Because all of the benefits at issue in these contracts were earned during Kozlowski's period of disloyalty, Tyco is relieved from any obligation to honor them.

For all these reasons, Tyco is entitled summary judgment dismissing Kozlowski's first, second, and ninth counterclaims.

Third and Fourth Counterclaims

Not all of the benefits agreements at issue here were necessarily fraudulently induced. Kozlowski's other benefits contracts--the DCP and SERP, subjects of Kozlowski's third and fourth counterclaims, respectively--were entered into prior to the date Kozlowski's criminal convictions conclusively establish that his misconduct began. These agreements, therefore, are not indisputably voidable as fraudulently induced or totally forfeited as a result of Kozlowski's disloyalty.

These benefit contracts are common forms of compensation for corporate executives and are known under ERISA as "top hat" plans. Such plans are largely exempt from the protections bestowed by ERISA

on deferred compensation plans, and benefits promised by such plans are susceptible to forfeiture.

The forfeitability of top hat plan benefits is governed by federal common law.  Black v. Bresee's Oneonta Dept. Store, Inc. Sec. Plan, 919 F. Supp. 597, 602 (N.D.N.Y. 1996).   Under federal common law, benefits accrued in top hat plans are assumed to be forfeitable unless otherwise agreed to by the parties to the contract.  Bigda v. Fischbach Corp., 898 F. Supp. 1004, 1016 (S.D.N.Y. 1995).  Executives are assumed to have a strong enough bargaining position when negotiating these plans to obtain the inclusion of a nonforfeitability provision if they wish to do so. See Aramony v. United Way Replacement Benefit Plan, 191 F.3d 140, 149-50 (2d Cir. 1999) ("sweeping non-forfeiture clause" precluded forfeiture even upon felony conviction).

The DCP and SERP contain no provision relating to forfeiture. Kozlowski creatively attempts to transform the agreements' vesting provisions into nonforfeiture clauses.  But the vesting provisions have nothing to do with whether there can be forfeiture based on wrongdoing. Without a clear nonforfeiture provision, under federal common law, an employer is entitled to withhold top hat plan benefits accrued during the period of a beneficiary's disloyalty.  Aramony v. United Way of Am., 28 F. Supp. 2d 147, 172 (S.D.N.Y. 1998) rev'd in part on other grounds, Aramony, 191 F.3d 140.

Because neither the DCP nor the SERP contain nonforfeiture clauses, Kozlowski must forfeit benefits accrued during the period of his disloyalty.   Thus Tyco is entitled to partial summary judgment dismissing Kozlowski's third and fourth counterclaims as to all benefits accrued after the beginning of his misconduct.   This misconduct conclusively began at its latest in September 1995 but there is still an open question as to possible benefits accruing earlier.   Tyco may, of course, make the case at trial that Kozlowski's misconduct began prior to his enrollment in the plans.

### Fifth and Sixth Counterclaims

Kozlowksi's fifth and sixth counterclaims are alternative contract claims made in the event that the ERISA does not apply to the DCP and SERP.   Because ERISA does apply, Tyco is entitled to summary judgment dismissing these claims.

### Seventh, Eighth, Tenth, Eleventh, and Twelfth Counterclaims

Kozlowski brings equitable claims of promissory estoppel (seventh, eight, tenth, and eleventh counterclaims) and unjust enrichment (twelfth counterclaim) based on the failure of Tyco to pay compensation Kozlowski claims is owed to him.   Kozlowski's claims must be rejected because he comes to the court with unclean hands.   See Melius v. Breslin, 846 N.Y.S.2d 645, 647 (2d Dep't 2007).   Therefore, Tyco is entitled to summary judgment dismissing Kozlowski's seventh, eighth, tenth, eleventh, and twelfth counterclaims.

Thirteenth Counterclaim

Kozlowski brings a counterclaim for conversion against Tyco for the compensation that underlies all his other causes of action.  Because, as discussed, Kozlowski has no valid claim to that compensation, Tyco is entitled summary judgment dismissing Kozlowski's thirteenth counterclaim.

Fourteenth Counterclaim

Kozlowski's counterclaim against Tyco under New York's labor law for his unpaid benefits suffers from the defect that he has no claim to the compensation he alleges is being withheld.  Tyco is entitled summary judgment dismissing Kozlowski's fourteenth counterclaim.

## CONCLUSION

Tyco's motion for partial summary judgment is granted as to their first, second, third, eighth, ninth, and eleventh causes of action, and denied as to their fourth, fifth, sixth, seventh, tenth, and twelfth causes of action.  As to the Kozlowski's counterclaims, Tyco is granted summary judgment dismissing all but Kozlowski's third and fourth counterclaims.  Tyco is granted partial summary judgment dismissing Kozlowski's third and fourth counterclaims only as to benefits accrued in or after September 1995.  Kozlowski's motion for summary judgment is denied its entirety.  This resolves motions listed as documents 39 and 43 in this case.

SO ORDERED.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY  FILED
DOC #: _____
DATE FILED:    12/1/10
```

Dated:  New York, New York
        December 1, 2010

Thomas P. Griesa
U.S.D.J.