IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TYCO INTERNATIONAL LTD. and TYCO INTERNATIONAL (US) INC., <br><br>Plaintiffs/Counterclaim Defendants, <br><br>v. <br><br>L. DENNIS KOZLOWSKI, <br><br>Defendant/Counterclaim Plaintiff. | Case No. 02-cv-7317 (TPG) |

### TYCO INTERNATIONAL LTD. AND TYCO INTERNATIONAL (US) INC.'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF TYCO'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DAMAGES

Pursuant to Local Civ. Rule 56.1(a), Plaintiffs and Counterclaim Defendants Tyco International Ltd. and Tyco International (US) Inc. (collectively, "Tyco"), by counsel, state as follows for their statement of undisputed facts in support of their Motion for Partial Summary Judgment as to damages:

## I.   LIABILITY IS ESTABLISHED

1. On December 1, 2010, this Court issued an Opinion granting Tyco's motion for summary judgment with regard to several of its claims against Kozlowski, including its breach of fiduciary duty, breach of contract, and conversion claims. Opinion, 12/1/2010, (Dkt. 79) ("Op.") at 1, 27.

2. The Court ruled that as a result of breaching his fiduciary duty to Tyco, as well as inducing and conspiring to commit breaches of fiduciary duties, Kozlowski is subject to New

York's "faithless servant" doctrine and that he must disgorge any and all compensation received during the identified period of disloyalty. (Op. at 17).

3. The Court ruled that Tyco is entitled to have Kozlowski forfeit all compensation earned from, at the latest, September 1995 until Kozlowski's dismissal in June 2002. (Op. at 19).

4. From September 1995 through June 2002, Kozlowski received             including federal taxes withheld, as compensation from Tyco. (Declaration of Linda A. Auger ("Auger Decl.") ¶ 10).

5. The Court ruled that Kozlowski has not repaid amounts loaned to him through Tyco's Key Employee Loan Program ("KELP"), as required by the program terms, that the program required that all amounts loaned to an employee would become immediately due upon that employee's termination for cause, and that Kozlowski does not dispute he was terminated for cause or that he has failed to repay amounts due on his loans. (Op. at 19).

6. Kozlowski has admitted that he has failed to pay his KELP balance. (Kozlowski's Responses & Objections to Tyco's First Set of Contention Interrogatories and Requests for Admissions at 37, Dkt. 47-5 (Ex. 9 to E. Edwards' Declaration in Support of Tyco's Motion for Partial Summary Judgment on Liability & Defendants Counterclaims)).

7. Kozlowski's outstanding KELP balance totals             , including             in contractual interest. (Auger Decl. ¶¶ 11, 59).

8. The Court also ruled that Kozlowski's criminal verdicts establish the elements of liability for conversion, leaving only damages for resolution. (Op. at 18).

**Redacted**

## II.    DAMAGES CALCULATIONS

### A.    W-2 Compensation

9.    From September 1, 1995 through December 31, 1995, Kozlowski earned        . This figure is comprised of base salary and dividend.[1]  (Auger Decl. ¶ 14).

10.    After miscellaneous deductions[2], Kozlowski's compensation less deductions ("Net Pay") during these four months was         , plus         in federal taxes withheld, for a total of $         .[3]  (Auger Decl. ¶ 14).

11.    In 1996, Kozlowski earned         from Tyco. This figure is comprised of base salary, bonus, dividend, vesting and "Other Earnings."[4]  (Auger Decl. ¶ 15).

12.    After deferred compensation, contributions 401(k) and the Deferred Compensation Plan ("DCP"), and other miscellaneous deductions, Kozlowski's Net Pay for 1996 was         , plus         in federal taxes withheld, for a total of         . (Auger Decl. ¶ 15).

---

[1] "Dividend" refers to dividends paid on outstanding restricted stock awards prior to vesting. (Auger Decl. ¶ 14).

[2] "Miscellaneous deductions" include medical, dental, and long term disability payments Tyco made on Kozlowski's behalf.  (Auger Decl. ¶ 15).

[3] "Net Pay" refers to "Total Earnings," plus federal income tax withheld. Net Pay does not include health and dental benefits, contributions to 401(k), and deductions other than federal taxes. Moreover, while contributions to the Supplemental Executive Retirement Plan are listed on Exhibit 1 to the Auger Declaration as earnings, these contributions also are included as deductions, so are income neutral. Tyco's calculations of Kozlowski's Net Pay on this motion are based on the W-2 forms plus the additions and subtractions noted in the text of, and in the other exhibits attached to, the Auger Declaration, filed simultaneously herewith. Exhibits 2 through 9 of the Auger Declaration contain a figure labeled "NET" that reflects a different presentation. Tyco is not relying on those figures in connection with this motion. (Auger Decl. ¶ 14).

[4] "Other Earnings" includes auto, aircraft, interest differential, group term life insurance and gross-ups. (Auger Decl. ¶ 15).

**Redacted**

3

13. In 1997, Kozlowski earned             from Tyco. (Auger Decl. ¶ 16). This figure is comprised of base salary, bonus, dividend, vesting and Other Earnings. (*Id.*)

14. After deferred compensation, contributions to the 401(k) and the DCP, and other miscellaneous deductions, Kozlowski's Net Pay for 1997 was           , plus           in federal taxes withheld, for a total of           (Auger Decl. ¶ 16).

15. In 1998, Kozlowski earned             from Tyco. (Auger Decl. ¶ 17). This figure is comprised of base salary, bonus, dividend, vesting, options, and Other Earnings. (*Id.*).

16. After deferred compensation, contributions to the 401(k) and the DCP, and other miscellaneous deductions, Kozlowski's Net Pay for 1998 was           plus           in federal taxes withheld, for a total of           . (Auger Decl. ¶ 17).

17. In 1999, Kozlowski earned             from Tyco. (Auger Decl. ¶ 18). This figure is comprised of base salary, bonus, share equivalents and Other Earnings. (*Id.*).

18. During 1999, Tyco deducted             from Kozlowski's earnings to pay down his KELP balance. (Auger Decl. ¶ 18).

19. This figure is comprised of           in KELP loan principal and           in KELP loan interest. (Auger Decl. ¶ 18).

20. After contributions to the 401(k) and the DCP, and other miscellaneous deductions, Kozlowski's Net Pay for 1999 was           plus           in federal taxes withheld, for a total of           (Auger Decl. ¶ 18).

21. In 2000, Kozlowski earned             from Tyco. (Auger Decl. ¶ 19). This figure is comprised of base salary, bonus, non-target bonus, vesting, options, share equivalents, Other Earnings, and the TyCom and ADT bonuses including gross-up. (*Id.*).

**Redacted**

4

22. During 2000, Tyco deducted            from Kozlowski's earnings to pay down his KELP balance. (Auger Decl. ¶ 19).

23. After contributions to the 401(k) and the DCP, and other miscellaneous deductions, Kozlowski's Net Pay for 2000 was            plus            in federal taxes withheld, for a total of            (Auger Decl. ¶ 19).

24. In 2001, Kozlowski earned            from Tyco. (Auger Decl. ¶ 20). This figure is comprised of base salary, bonus, vesting and Other Earnings. (*Id.*).

25. After contributions to the 401(k) and the DCP, and other miscellaneous deductions, Kozlowski's Net Pay for 2001 was            plus            in federal taxes withheld, for a total of            ? (Auger Decl. ¶ 20).

26. In 2002, Kozlowski earned            from Tyco. (Auger Decl. ¶ 21). This figure is comprised of base salary, vesting and Other Earnings. (*Id.*).

27. After contributions to the 401(k) and the DCP, and other miscellaneous deductions, Kozlowski's Net Pay for 2002 was            plus            in federal taxes withheld, for a total of            . (Auger Decl. ¶ 21).

28. Kozlowski's Net Pay between September 1, 1995 and June 2002 (when his employment with Tyco ended) was            plus            in federal taxes withheld, for a total of            (Auger Decl. ¶ 22).

29. In connection with his criminal convictions in 2005, Kozlowski was ordered to pay certain restitution amounts to Tyco ("Restitution Order"). (Auger Decl. ¶ 23).

30. Kozlowski complied with the Restitution Order and paid the following amounts to Tyco:

    a. Count One: $25,000,000 - Grand Larceny in the First Degree (1999 KELP Reduction)

**Redacted**

      b. Count Three: $32,976,068 - Grand Larceny in the First Degree (TyCom IPO)

      c. Count Five: $25,566,610 - Grand Larceny in the First Degree (ADT)

      d. Count Eight: $14,235,618 - Grand Larceny in the First Degree (FLAG).

(Auger Decl. ¶ 24).

31. Three of the amounts that Kozlowski was ordered to pay back were for bonuses originally reflected in his W-2 statements – the $32,976,068 (TyCom IPO bonus), the $25,566,610 (ADT bonus), and the $14,235,618 (FLAG bonus). These items total $72,778,296. (Auger Decl. ¶ 25).

32. The $25,000,000 1999 KEL Reduction was achieved by an accounting entry that reduced Kozlowski's then-existing KELP balance by $25,000,000, and was not reflected in Kozlowski's W-2 statements. Tyco has not credited Kozlowski that amount here because he has been given credit for the $25,000,000 restitution payment in his KELP account. (Auger Decl. ¶ 26).

33. Kozlowski's total Net Pay (including federal taxes withheld) between September 1, 1995 and June 2002, after giving credit for his restitution payment, is

(Auger Decl. ¶ 27).

**B. Transfers to and Exercises by the Family Partnerships**

    **1. The Kozlowski Family Partnership (*aka* the KFT Family Partnership)**

34. On June 19, 1998, Kozlowski, along with his children, Cheryl and Sandra, established the Kozlowski Family Partnership L.P. (the "Kozlowski Family Partnership" or "KFT Family Partnership"). (Auger Decl. ¶ 28).

35. The purpose of the Kozlowski Family Partnership was "to acquire, for investment, to hold and to dispose of such securities as the General Partners shall determine; to

**Redacted**

6

engage in activities incidental or ancillary to the foregoing and to engage in any other lawful business or activities for which limited partnerships may be organized under the" Revised Uniform Limited Partnership Act as then in force in the State of Delaware. (Auger Decl. ¶ 29).

36.   According to the Kozlowski Family Partnership formation documents, as of June 19, 1998, Kozlowski was the sole "General Partner" and appears to have possessed a 98% interest in the Kozlowski Family Partnership. (Auger Decl. ¶ 30).

37.   On August 20, 1999, the Kozlowski Family Partnership changed its name to "KFT Family Partnership, L.P." (Auger Decl. ¶ 31).

38.   As of the date of the filing of Kozlowski's 2007 federal tax returns, Kozlowski possessed a 61.2949% interest in the KFT Family Partnership. (Auger Decl. ¶ 32).

39.   As part of Kozlowski's compensation, Tyco made multiple grants of Tyco stock options to Kozlowski as follows:

| Grant Date | Exercise Price | No. of Shares |
|---|---|---|
| 7/17/1997 | | 1,000,000 |
| 7/16/1998 | | 100,000 |
| 7/16/1998 | | 83,200 |
| 7/16/1998 | | 300,000 |
| 7/17/1998 | | 250,000 |
| 7/17/1998 | | 1,000,000 |
| 10/1/1998 | | 70,800 |
| 10/22/1998 | | 292,000 |
| 2/18/1999 | | 60,200 |
| 6/11/1999 | | 20,000 |
| **Total** | | **3,176,200** |

(Auger Decl. ¶ 33).

40.   All of these options were granted to Kozlowski after September 1995 and before June 2002. (Auger Decl. ¶ 34).

41.   In July 1999, Kozlowski transferred these 3,176,200 Tyco stock options to the Kozlowski Family Partnership. (Auger Decl. ¶ 35).

**Redacted**

7

42. The stock options "were transferred to The Kozlowski Family Partnership, L.P., a limited partnership in which the reporting person and his family members directly and indirectly own all interests, for          payable on July 19, 2014, plus accrued interest at a rate of 8.84% per annum, payable on July 19 of each year." (Auger Decl. ¶ 36).

43. A 2-for-1 stock split on July 19, 1999 doubled the number of stock options transferred by Kozlowski from 3,176,200 shares to 6,352,400 shares. (Auger Decl. ¶ 37).

44. All but 40,000 of these now 6,352,400 options were exercised on July 22, 1999. (Auger Decl. ¶ 38).

45. The exercise of these stock options resulted in a gain of          (Auger Decl. ¶ 39).

46. The remaining 40,000 options were exercised in September 2000: 30,626 options were exercised on September 7, 2000; 7,700 were exercised on September 11, 2000; and 1,674 options were exercised on September 12, 2000. (Auger Decl. ¶ 40).

47. The exercise of these remaining Tyco stock options resulted in a gain of          (Auger Decl. ¶ 41).

48. The total gain realized as a result of the exercise of the stock options transferred to the Kozlowski Family Partnership is         . (Auger Decl. ¶ 42).

### 2. The DCS Family Partnership

49. On August 1, 2000, Kozlowski, along with his children, Cheryl and Sandra, established the DCS Family Partnership, L.P. (the "DCS Family Partnership"). (Auger Decl. ¶ 43).

50. The purpose of the Partnership was "to acquire, for investment, to hold and to dispose of such securities as the General Partners shall determine; to engage in activities

**Redacted**

incidental or ancillary to the foregoing and to engage in any other lawful business or activities for which limited partnerships may be organized under the" Revised Uniform Limited Partnership Act as then in force in the State of Delaware. (Auger Decl. ¶ 44).

51. According to the DCS Family Partnership formation documents, as of August 1, 2000, Kozlowski was the sole "General Partner" and appears to have possessed a 98% interest in the DCS Family Partnership. (Auger Decl. ¶ 45).

52. As of the date of the filing of Kozlowski's 2007 federal tax returns, Kozlowski possessed an 86.5% interest in the DCS Family Partnership. (Auger Decl. ¶ 46).

53. As part of Kozlowski's compensation, Tyco made additional grants of Tyco stock options to Kozlowski as follows:

| Grant Date | Exercise Price | No. of Shares |
|---|---|---|
| 7/17/1997 | | 2,000,000 |
| 10/18/1999 | | 392,000 |
| **Total** | | **2,392,000** |

(Auger Decl. ¶ 47).

54. Kozlowski transferred these 2,392,000 Tyco stock options to the DCS Family Partnership on August 1, 2000. (Auger Decl. ¶ 48).

55. The stock options were transferred in exchange for the DCS Family Partnership's "promise[] to pay to [Kozlowski], on August 1, 2015, the principal amount of

… plus accrued interest, payable annually on August 1 of each year, and accruing at a rate of nine and one quarter percent (9.25%) per annum." (Auger Decl. ¶ 49).

56. All of these options were granted to Kozlowski after September 1995 and before June 2002. (Auger Decl. ¶ 50).

57. These shares were exercised by the DCS Family Partnership as follows:

**Redacted**

9

- On September 7, 2000, DCS Family Partnership exercised 773,492 options at an option price of

- On September 7, 2000, DCS Family Partnership exercised 392,000 options at an option price of

- On September 11, 2000, DCS Family Partnership exercised 1,007,401 options at an option price of

- On September 12, 2000, DCS Family Partnership exercised 219,107 options at an option price of

(Auger Decl. ¶ 51).

58. The exercise of these stock options resulted in a gain of             (Auger Decl. ¶ 52).

59. The total gain realized as a result of the exercise of the stock options transferred to the Kozlowski Family Partnership and the DCS Family Partnership is             . (Auger Decl. ¶ 53).

60. Because the "faithless servant" doctrine requires him to disgorge all compensation he received during the period of disloyalty, Kozlowski must disgorge the             in compensation as a result of Tyco's granting of stock options. (Auger Decl. ¶ 53)

61. The total amount of compensation that is subject to the Court's disgorgement ruling in the December 1, 2010 Opinion is             (Auger Decl. ¶ 54).

62. This figure does not include prejudgment interest. (Auger Decl. ¶ 54).

**Redacted**

10

## II.  KELP BALANCE

63.  Tyco established the KELP "to encourage ownership of Company common stock on favorable terms, and to reward those who have contributed to past success and those who are expected to make substantial contributions in the future to the successful management and growth of the Company." (Auger Decl. ¶ 55).

64.  Under the KELP, loan proceeds could be used for "payment of federal income taxes due upon the vesting of Company common stock from time to time under the 1983 and 1994 Restricted Stock Ownership Plans for Key Employees, and to refinance other existing outstanding loans for such purposes." (Auger Decl. ¶ 56).

65.  "Effective January 1, 1993, interest on amounts loaned under the Program shall be at a rate equal to [the] prime lending rate announced by the principal lending or agent commercial bank of the Company (or such other bank as may be determined by the Board of Directors), such rate to change, from time to time, so that it shall at all times be equal to such prime lending rate, but adjusted no more often than quarterly." (Auger Decl. ¶ 57).

66.  "Termination of a Participant for cause will require immediate repayment of all outstanding loans and all accrued interest." (Auger Decl. ¶ 58).

67.  As of December 31, 2010, Kozlowski's KELP balance was              This amount includes              in contractual interest pursuant to the KELP governing documents. (Auger Decl. ¶¶ 59-60).

68.  This figure does not include prejudgment interest. (Auger Decl. ¶¶ 59-60).

**Redacted**

11

Dated: New York, New York
       March 11, 2011

Respectfully submitted,

*[signature]*

Marshall Beil
MCGUIREWOODS LLP
1345 Avenue of the Americas
New York, NY 10105-0106
Telephone: (212) 548-2100
mbeil@mcguirewoods.com

and

Charles Wm. McIntyre
MCGUIREWOODS LLP
2001 K. Street N.W.
Suite 400
Washington, D.C. 20006-1040
Telephone: (202) 857-1700
cmcintyre@mcguirewoods.com

*Attorneys for Plaintiffs Tyco International Ltd. and Tyco International (US), Inc.*