IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TYCO INTERNATIONAL LTD. and<br>TYCO INTERNATIONAL (US) INC.,<br><br>    Plaintiffs/Counterclaim Defendants,<br><br>v.<br><br>L. DENNIS KOZLOWSKI,<br><br>    Defendant/Counterclaim Plaintiff. | Case No. 02-cv-7317 (TPG) |

## SUPPLEMENTAL DECLARATION OF LINDA A. AUGER IN SUPPORT OF TYCO'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DAMAGES

1. I, Linda A. Auger, am employed by Tyco International Management Company, LLC as its Senior Director of Federal Tax Audits. As part of my duties and responsibilities, I oversee and supervise six employees in Tyco's Federal Tax Audit Group. I moved to the Federal Tax Audit Group in August of 2004. Before that time, I worked in the Controllers Group supervising the accounting for Tyco's corporate general ledgers including Tyco International (US) Inc. and TME Management Corp., which is where the compensation of a majority of Tyco's former Chief Executive Officer L. Dennis Kozlowski ("Kozlowski') compensation was booked. I have maintained supervision of the majority of the corporate books and records created under my supervision, relating to Kozlowski, in connection with my role in the Federal Tax Audit group.

2. The facts set forth herein are based on my personal knowledge and/or review of Tyco's files and records concerning the compensation of Kozlowski, and if called as a witness, I could and would testify competently thereto. Tyco has designated me to give this supplemental

declaration in support of Tyco's Motion for Partial Summary Judgment as to Damages.

3. With the exception of Exhibit 33, the records referenced below and attached to this declaration were made in the regular course of Tyco's business, at or near the time of the event that such entries purport to reflect, and Tyco maintains all such files as a record for information relating to Tyco's business.[1] Tyco's employees rely on the accuracy of information contained in such files to conduct business and to report earnings to the Internal Revenue Service and Securities Exchange Commission. It is the responsibility of each person who works with these files to make sure they are as current and correct as possible.

4. I am providing additional testimony regarding the following issue: whether the stock awards and stock option awards Tyco paid Kozlowski from September 1995 until his dismissal in June 2002, as described in my first declaration and the exhibits thereto, were compensation paid to Kozlowski from September 1995 through June 2002.

5. For the purpose of making this supplemental declaration, I have reviewed the portions of Kozlowski's Memorandum of Law in Opposition to Tyco's Motion for Partial Summary Judgment as to Damages ("Memorandum in Opposition") and Kozlowski's Statement of Additional Material Facts in Dispute and in Response to the Statement of Undisputed Facts in Support of Tyco's Motion for Partial Summary Judgment as to Damages ("SDF") related to this issue.

5. For the purpose of making this supplemental declaration, I also have reviewed Tyco's business records concerning Kozlowski's compensation, including the exhibits attached hereto, and I have reviewed Kozlowski's March 31, 2011 Asset and Liability Report, attached as

---

[1] Exhibit 33 is a report of assets and liabilities that Kozlowski provides to Tyco as required by the October 31, 2008 Preliminary Injunction Order entered by the U.S. District Court for the District of New Hampshire (in the multidistrict litigation proceedings captioned, *In re: Tyco Int'l Ltd., Sec. Litig.*, MDL No. 02-1335-B), as amended on November 23, 2010, by this Court.

Exhibit 33.

## I. STOCK AWARD COMPENSATION

6. On pages 22-23 of his Memorandum in Opposition, Kozlowski states that "Tyco includes stock awards made prior to the period of purported 'disloyalty'" in the amount of compensation to be disgorged. This is incorrect. As my first declaration and its exhibits show, Tyco included in its compensation totals only amounts paid from September 1, 1995 through June, 2002 when Kozlowski's employment at Tyco ended. (First Auger Decl. (Dkt. 95) ¶¶ 14-23, 27; Exhibit 1 (Summary W-2 Compensation Chart) ("Exh. 1").)

7. Also, my declaration and the Summary W-2 Compensation Chart show that Tyco specifically excluded any compensation paid between January 1, 1995 and August 31, 1995 in its earnings calculation. (First Auger Decl., ¶ 14; Exh. 1.) Columns B and C of the chart identify compensation paid from "1/1-8/31/1995" (column B) and "9/1-12/31/1995" (column C). (Exh. 1.) The final column is titled "Post 8/31/1995 Total." (Exh. 1 at column L.) This column shows Kozlowski's total "Net Pay" compensation from September 1995 until June 2002 and expressly excludes compensation, including dividends and vesting, paid from January 1 through August 31, 1995. (*Id.*)

8. On page 23 of his Memorandum in Opposition, Kozlowski states that "[i]f stock was awarded to Mr. Kozlowski before the period of purported disloyalty, but vested or paid dividends during such period . . . such vesting or dividends [should not be treated] as disgorgeable compensation . . . ." This also is incorrect. As I stated in my first declaration, all dividends reflected on Tyco's summary chart were paid on restricted stock. (First Auger Decl. ¶ 14, n. 2.) The stock awards at issue were made pursuant to Tyco's 1983 Restricted Stock Ownership Plan for Key Employees, which provides that grants under the Plan were in the form

3

of restricted stock awards. A copy of the Plan is attached hereto as Exhibit 31 ("Exh. 31"). (See Exh. 31, ¶ 5.)

9. Unless certain conditions were met, the restricted shares were owned by Tyco, not the employee. Kozlowski's restricted stock award letter, dated December 6, 1989, states that "[v]esting ownership of the stock is contingent upon continued employment by Tyco or its subsidiaries." A copy of this letter is attached as Exhibit 32 ("Exh. 32"). (See Exh. 32, p. 1.) If employment at Tyco ended, "the [stock] certificates [would] be surrendered for cancellation." (Id., p. 2.)

10. Similarly, the Restricted Stock Plan provides that "[i]n the event of termination of employment for any reason except death or disability, Restricted Shares shall be returned to the Company . . . . Upon the occurrence of death or permanent disability of the Participant the restrictions on disposition of shares as to which such restrictions have not otherwise lapsed under the Plan shall immediately lapse." (Exh. 31, ¶ 6 (d).)

11. Kozlowski could not transfer shares of restricted stock until those shares vested. The grant letter provides that "[t]he stock, prior to vesting of ownership, cannot be sold or transferred." (Exh. 32, p. 2.) Also, the terms and conditions of the Tyco's Restricted Stock Ownership Plan provide that "[s]hares of Common Stock acquired pursuant to a Restricted Stock Award shall not be sold, transferred or otherwise disposed of and shall not be pledged or otherwise hypothecated until the restrictions lapse." (Exh. 31 ¶ 6(c).) Therefore, by their own terms and conditions, the restricted shares did not become Kozlowski's compensation, nor did Tyco treat them as compensation, until they vested.

12. As my first declaration and its exhibits reflect, any dividends paid or vesting that occurred before the disloyalty period began are not included in the total Net Pay set out in

column L of Exhibit 1. (First Auger Decl. ¶¶ 14-23, 27; Exh. 1.)

13. Accordingly, Kozlowski's total Net Pay, as set out in Exhibit 1 to my first declaration, does not include dividends, vestings or other compensation paid to Kozlowski before September 1, 1995. (First Auger Decl., Exh. 1, column L ("Post 8/31/1995 Total".)

## II. STOCK OPTION COMPENSATION

14. On page 20 of the Memorandum in Opposition, Kozlowski states that the $223,097,742 resulting from Tyco's granting of stock options to him is "not 'compensation' to Mr. Kozlowski." He also states, at page 21, that if the Kozlowski Family Partnerships' "exercise of the options were compensation of Mr. Kozlowski, Tyco, as Mr. Kozlowski's former employer, would have been obligated to report that compensation in its tax filings and to pay required tax withholdings to the U.S. Treasury."

15. The stock options at issue were paid to Kozlowski in connection with the performance of services. Accordingly, they are compensation. Kozlowski's choice to defer their inclusion in his income does not change the fact that Tyco paid Kozlowski these stock options as compensation during the period of disloyalty.

16. As Exhibit 24 to my first declaration shows, Kozlowski reported to the IRS on his 2007 federal tax return that in 2014 and 2015 he will recognize income from the stock options "and the employer, Tyco, will be entitled to a compensation deduction" at that time. (First Auger Decl., Exh. 24.) The deferral of the income recognition and Tyco's claiming of a deduction do not affect the fact that the options were compensation paid to Kozlowski during the period of disloyalty.

17. Also, in his court-ordered report to Tyco of his assets and liabilities, Kozlowski confirmed that "federal income taxes shall be owed on the amount of        for the year

**REDACTED**

5

2014" and "on the amount of             for the year 2015." A copy of the Report on Assets and Liabilities of L. Dennis Kozlowski as of March 31, 2011, is attached as Exhibit 33 ("Exh. 33"). (*See* Exh. 33, p. 8.)

18.   Finally, Kozlowski provided Tyco with an Opinion Letter from Arthur Anderson concluding that

An excerpt of a copy of the Arthur Anderson Opinion Letter dated February 16, 2001, is attached hereto as Exhibit 34 ("Exh. 34"). (*See* Exh. 34 at § 5)).

19.   I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 8, 2011.

*Linda A. Auger*

**REDACTED**

6